IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LORRAINE FORTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-426-WKW |
| | ) | [WO] |
| QUALITY RESTAURANT | ) | |
| CONCEPTS, dba APPLEBEE'S, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In a prior Order, the court ordered Plaintiff Lorraine Fortson and her former employer, Quality Restaurant Concepts, to arbitrate Plaintiff's dispute with respect to the termination of her employment and stayed this action until the conclusion of the arbitration proceedings. (Doc. # 25.) Pending is Defendant's Motion to Lift the Stay and to Enforce the Settlement. (Doc. # 31.) Plaintiff responded in opposition (Doc. # 33), asserting that she did not agree to settle her termination dispute, and Defendant replied to the contrary (Doc. # 34). The parties' submissions did not address, however, whether this court or the arbitrator should decide whether the parties reached a valid settlement agreement; therefore, the court ordered additional briefing on this threshold issue.

In the briefing, Plaintiff advocates that the issue is for the arbitrator to decide, while Defendant contends that the issue is for the court. (Docs. # 36–37.)

After careful consideration of the parties' arguments, the court finds that the court, not the arbitrator, must decide whether the parties reached a valid settlement agreement.

## I. BACKGROUND

On June 18, 2013, Plaintiff filed this lawsuit, alleging that Defendant terminated her employment because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–24. Defendant moved to compel arbitration of the claim based upon its Internal Dispute Resolution Policy, which contains an Arbitration Agreement.[1] On January 21, 2014, the court granted Defendant's motion to compel arbitration of Plaintiff's ADEA claim and stayed this action.

Thereafter, the parties resorted first to Defendant's internal dispute review ("IDR"), which by agreement must precede arbitration. After the completion of the IDR, but prior to formal arbitration, the parties engaged in settlement talks through a series of informal emails. The gist of those emails is that Plaintiff inquired whether Defendant would be "interested in some resolution" of the dispute surrounding her termination whereby her personnel file would reflect that her separation from Defendant's employment was the result of a voluntary

---

[1] The "Internal Dispute Resolution Policy" contains both an internal dispute resolution policy and an employment arbitration policy. For ease of reference, the policy here is referred to as the "Arbitration Agreement."

resignation, not a termination. (Doc. # 31-1, at 2.) Defendant responded seeking clarification as to whether that proposal would include a release, to which Plaintiff replied, "[T]hat is an accurate description of the proposal." (Doc. # 31, at 3.) Defendant subsequently "agree[d] to this proposal as clarified" by the earlier email. (Doc. # 31, at 3.) Defendant mailed Plaintiff a copy of a settlement document, consisting of three, single-spaced, type-written pages. (Doc. # 33-1, at 2–4.) Plaintiff's counsel refused to tender the document to his client for her signature, however, indicating that Plaintiff "ha[d] decided not to accept the resignation proposal at this time," that Plaintiff "ha[d] always sought a financial component to a settlement," and that the settlement document contained additional terms not discussed between the parties. (Doc. # 31-5, 31-6, at 2–3.)

The parties dispute whether the emails and exchanges culminated in a valid settlement agreement of the underlying arbitrable dispute relating to Plaintiff's termination. Defendant says that they did, but Plaintiff says that they did not. As a result of this disagreement, Plaintiff initiated the arbitration process under the Arbitration Agreement's provisions, while Defendant filed the present motion in this court to lift the stay and enforce the alleged settlement agreement. Defendant's motion to enforce the settlement agreement rests here only if the issue of whether the parties entered into a valid settlement agreement is not within the scope of the Arbitration Agreement.

3

The Arbitration Agreement provides that, "[w]ith the exceptions listed below, binding arbitration is the final, exclusive, and required forum for the resolution of all employment-related disputes which are based on a legal claim." It defines a "dispute" as follows:

> A dispute is based on a legal claim and is subject to [arbitration] if it arises [out of][2] or involves a claim under any federal, state, or local statute, regulation, or common law doctrine regarding or relating to employment discrimination, terms or conditions of employment, or termination of employment including, but without limitation: . . . the Age Discrimination in Employment Act.

(Doc. # 36-1, at 3.) The exceptions referenced above include the following paragraph:

> The Policy does not require that [Defendant] initiate the arbitration process with respect to any dispute. In addition, [Defendant] is not required to follow the steps of either IDR [Internal Dispute Resolution] or the Policy before initiating or implementing any disciplinary action, or before asserting any claim, demand, or action against an employee for breach of any restrictive covenant, wrongful demand, or action against an employee for breach of any restrictive covenant, wrongful disclosure of confidential information, or any other actions which may constitute a breach of contract, a breach of a common law duty, or a breach or violation of either civil or criminal law.

---

[2] Although not mentioned by the parties, the Arbitration Agreement contains a typographical error, omitting a necessary word or phrase after "arises." It seems that either the word "under" or the phrase "out of" should follow the word "arises." The court need not decide whether the parties intended to insert the phrase "arises out of" or "arises under" because in the context of arbitration agreements, the Eleventh Circuit has not differentiated between the two phrases. *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 386 (11th Cir. 1996) ("This Court has not drawn a distinction between the words 'arising under' and 'arising out of.'"). For purposes of this opinion, the court will refer to the contract language as "arises out of," but, as the discussion will reveal, resolution of the present controversy does not turn upon an interpretation or application of the phrase "arises out of."

(Doc. # 36-1, at 4.)[3]

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, which generally governs the validity of arbitration agreements, evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "There is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)).

However, because the FAA is "'at bottom a policy guaranteeing the enforcement of private contractual arrangements,'" the court must "look first to whether the parties agreed to arbitrate, not to general policy goals, to determine the scope of the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). Hence, where the parties have entered into an arbitration agreement,

---

[3] The "Policy," as quoted above, is the Arbitration Agreement.

the court must ensure that the dispute falls within the scope of the agreement before it compels an unwilling party to arbitrate. *See World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1245 (11th Cir. 2008) ("We . . . must determine whether the dispute between the [parties] falls within the scope of that arbitration clause.").

Under the FAA, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.*, 363 U.S. at 582; *see also Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992). The FAA does not "prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement," *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989), but the "parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998); *see also Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990) ("[P]arties will not be required to arbitrate when they have not agreed to do so.").

"When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d

1252, 1255 (11th Cir. 2012) ("[I]nterpretation of an arbitration agreement is generally a matter of state law."). Under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." *Serv. Corp. Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003). Finally, the gateway "question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Tech., Inc.*, 475 U.S. at 649); *see also Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013) (observing that "gateway matters," such as "whether a concededly binding arbitration clause applies to a certain type of controversy," are for the courts to decide (citation and internal quotation marks omitted)).

### III. DISCUSSION

The issue is whether the dispute concerning the validity of the alleged settlement agreement is within the scope of the Arbitration Agreement. This gateway issue is for the court to decide, not the arbitrator, because the Arbitration Agreement does not "clearly and unmistakably provide otherwise." *AT & T Tech., Inc.*, 475 U.S. at 649. Resolution of the gateway issue is important because it determines who decides the issue of whether the parties entered into a valid settlement agreement. If the issue of whether the parties entered into a valid

settlement is within the scope of the Arbitration Agreement, then the arbitrator must decide it. If it is not, then the issue is for the court to decide.

Plaintiff argues that the dispute about the validity of the settlement agreement is for resolution in the arbitral forum because the alleged settlement agreement seeks to resolve the arbitrable issue surrounding the termination of Plaintiff's employment. In other words, Plaintiff contends that the arbitrator must decide whether the parties entered into a valid settlement agreement because that agreement relates to an arbitrable employment dispute. Defendant contends, though, that the Arbitration Agreement expressly contemplates only employee-initiated actions and explicitly excepts from its coverage all employer-initiated actions and, in particular, employer-initiated actions for breach of contract. Defendant asserts that its motion to enforce the alleged settlement agreement is both an employer-initiated action and a claim for breach of contract and, therefore, does not fall within the scope of the Arbitration Agreement.

The court's analysis must begin with the contractual language in the Arbitration Agreement, as interpreted under Alabama law, and all provisions of the agreement, including its exceptions, must be given their full meaning. *See Brewbaker Motors, Inc. v. Belser*, 776 So. 2d 110, 112 (Ala. 2000) ("When interpreting a contract, a court should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of

the agreement clearly state."); *see id.* ("[T]his Court will interpret the terms of a contract to give effect to all terms used." (citation and internal quotation marks omitted)).  The parties agreed to arbitrate "a legal claim" that "arises [out of] or involves a claim . . . relating to employment discrimination," including a claim under "the Age Discrimination in Employment Act."  (Doc. # 36-1, at 3.)  While the agreement provides that "binding arbitration is the final, exclusive, and required forum for the resolution of all employer-related disputes which are based on a legal claim," it expressly qualifies the scope of arbitrable coverage with enumerated exceptions.  (Doc. # 36-1, at 3 ("With the exceptions listed below, . . .").)

One of the exceptions easily resolves the present controversy.  Namely, the Arbitration Agreement "does not require that [Defendant] initiate the arbitration process with respect to any dispute."  (Doc. # 36-1, at 4.)  The Eleventh Circuit has held that the word "any" means "all" in the context of an arbitration agreement. *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003). Although *Anders* was examining a contract provision that required arbitration of "any dispute," as opposed to here where the contract provision excludes arbitration of "any dispute" under specified conditions, the court discerns no reason, and none has been offered, for interpreting the contract terms differently simply because they fall within an arbitration agreement's exclusionary provisions, rather than its

9

coverage provisions.  *See Goldberg*, 912 F.2d at 1419–20 (explaining, in the context of interpreting an arbitration agreement's exclusionary provisions, that "courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties," but rather courts are "simply require[d]" under the FAA "to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms" (citation and internal quotation marks omitted)).

Here, Defendant has a new dispute with Plaintiff.  Namely, Defendant contends that it entered into a valid settlement agreement with Plaintiff and that Plaintiff has refused to acknowledge the agreement.  As a result of this dispute, Defendant has initiated a claim in this action against Plaintiff to enforce the alleged settlement agreement.  The Arbitration Agreement is clear:  It expressly excludes from binding arbitration "any dispute" that Defendant initiates.  "Any" is comprehensive; it includes "all" Defendant-initiated disputes.  Accordingly, "any dispute" necessarily encompasses the claim that Defendant has initiated in this action to enforce the alleged settlement agreement.  Giving effect to the plain terms of the Arbitration Agreement, which expressly "do[ ] not require that [Defendant] initiate the arbitration process with respect to any dispute" (Doc. # 36-1, at 4), the

court finds that the parties "clearly express[ed]" their intent to exclude the present dispute from the agreement.[4] *Paladino*, 134 F.3d at 1057.

Plaintiff's argument that the arbitrator must decide the issue of whether the settlement agreement is valid because it "resolved an underlying employment-related dispute already subject to an arbitration agreement" relies upon *Niro v. Fearn International, Inc.*, 827 F.2d 173 (7th Cir. 1987), a federal labor case involving a collective bargaining agreement. The argument finds some support in *Niro*, which held that "a settlement agreement is an arbitrable subject when the underlying dispute is arbitrable . . . ." *Id.* at 175. It is true, in this case, that the underlying dispute concerning Plaintiff's termination is arbitrable, and a prior Order directed the parties to arbitrate that dispute. But the Seventh Circuit qualified its holding in *Niro* by adding "except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated." *Id.* Plaintiff acknowledges this second part of *Niro*'s holding but contends that none of the exceptions in the Arbitration Agreement apply because there is no mention of the "enforceability of a settlement agreement of an employee-related dispute." (Doc. # 36, at 2.) But the parties here did mention it and did so expressly. They

---

[4] Based upon this finding, it is not necessary to address Defendant's additional argument that the present dispute is a dispute about the alleged Settlement Agreement, not a dispute about a legal claim that relates to employment discrimination. Nor is it necessary to address Defendant's argument that it is not required to arbitrate under the provision that excepts employer-initiated claims against employees for breach-of-contract.

excepted from the Arbitration Agreement "any dispute" initiated by the employer. The Arbitration Agreement need not enumerate every dispute that falls within "any dispute" and to do so would be impractical. To reiterate, "any" means "all," and the Arbitration Agreement's exception for "any dispute" initiated by Defendant could not be clearer. Significantly, the controlling terms of the agreement in *Niro* contained no exclusions. To the contrary, the agreement required arbitration of "any dispute . . . between the Company and the Union or between the Company and any of its employees . . . ." *Niro*, 827 F.2d at 175 n.1. Plaintiff's argument for finding that the validity of the alleged settlement agreement is an arbitrable subject lacks persuasiveness.[5]

## IV. CONCLUSION

"[P]arties will not be required to arbitrate when they have not agreed to do so." *Goldberg*, 912 F.2d at 1419. The Arbitration Agreement provides a clear exception to arbitration; namely, it "does not require that [Defendant] initiate the arbitration process with respect to any dispute." (Doc. # 36-1, at 4.) Defendant has brought a claim that the parties entered into a valid settlement agreement and seeks to enforce that alleged settlement agreement. In short, Defendant has initiated a dispute within the meaning of the Arbitration Agreement's express

---

[5] The court also asked the parties to address whether *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Poore*, No. 03–0228, 2003 WL 21294995 (E.D. Pa. Feb. 20, 2003), is a sufficiently analogous case. Upon consideration of the parties' briefing, the court finds that *Merrill Lynch, Pierce, Fenner & Smith* is distinguishable because the pertinent arbitration provisions in that case did not contain any exceptions like the one here.

exclusion provision. It may be said, therefore, with "positive assurance" that the Arbitration Agreement "is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc.*, 475 U.S. at 650. "Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). Accordingly, it is for this court to decide whether the parties reached a valid settlement agreement.

An order setting this case for a hearing on Defendant's motion to enforce the settlement agreement will be entered separately.

So ORDERED this 12th day of May, 2015.

/s/ W. Keith Watkins<br>CHIEF UNITED STATES DISTRICT JUDGE